| | |
|---|---|
| **JOHNNA PLAUNT,** | :   **No. 3:09cv079** |
|          **Plaintiff** | :   **No. 1:09cv084** |
|     **v.** | :   **(Judge Munley)** |
| **DOLGENCORP, INC.,** | : |
|          **Defendant** | : |

**MEMORANDUM**

Before the court for disposition is Defendant Dolgencorp, Inc.'s motion for summary judgment on Plaintiff Johnna Plaunt's claims under the Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), and motion to strike plaintiff's evidence. (Docs. 51, 100).[1] The motions have been fully briefed and are ripe for disposition.

## BACKGROUND

This case is one of several actions brought by Dollar General Store Managers alleging that Defendant Dolgencorp, Inc. owes them overtime-pay under the Fair Labor Standards Act.[2] Plaintiff Johnna Plaunt ("Plaunt") was hired by Defendant Dolgencorp, Inc. ("Dolgencorp") as an Assistant Store Manager ("ASM") at its store in Middletown, Pennsylvania in September of 2000. (Plaunt Dep. at 26 - 27 (Doc. 81-4)). In June of 2001 Plaunt was promoted to Store Manager and she worked in that capacity until she resigned in February of 2002. (Id. at 32 - 33). Plaunt worked again for Dolgencorp in February of 2003 as a clerk at a store in York, Pennsylvania. (Id. at 33). She then transferred to a Dolgencorp store in

---

[1] All citations to document numbers refer to the docket in Altemose v. Dolgencorp, Inc., No. 3:09cv079, into which Plaunt's case was consolidated for pre-trial purposes.

[2] Pursuant to the parties' joint stipulation, Defendant Dolgencorp, Inc. is the proper party defendant in this action. (See Doc. 38).

Harrisburg, Pennsylvania as an ASM. (Id. at 35). In June of 2003 she returned to the Middletown store and worked there as a Store Manager until April of 2004 when she resigned again. (Id. at 35 - 36).

When Plaunt worked as an ASM in Middletown, she was directed by the Store Manager Kerin Lukens. (Plaunt Dep. at 30). As an ASM, Plaunt did not interview applicants, hire applicants, terminate employees, review employee performance, or counsel employees. (Id. at 30 - 31).

As a Store Manager, Plaunt directed her ASM and store employees in what to do, however she denies having supervised them. (Plaunt Dep. at 168; Pl.'s Response to Def.'s Undisputed Facts ¶ 2 (Doc. 84)). As a Store Manager, Plaunt was paid $425.00 per week on a salary basis which was supposed to compensate her for up to forty-five hours of work. (Plaunt Dep. at 32, 56, 199; Ex. B, Store Report (Doc. 59)). She later was paid $475.00 per week. (Ex. B, Store Report (Doc. 59)). On average, she worked fifty hours per week as a Store Manager. (Id. at 202). Plaunt believed she was eligible for overtime. (Id. at 56). Plaunt was the only employee in the store classified as exempt from overtime requirements. (Id. at 199). Dollar General stores were eligible to receive bonuses based on the store's profitability, with higher portions thereof being paid to Store Managers than to other employees, although Plaunt never earned such a bonus. (Id. at 55 - 59, 191). Plaunt's ASMs earned $6.50 or $8.25 per hour. (Def. Statement Undisputed Facts ¶ 6 (Doc. 52)).

As a Store Manager, Plaunt reported to a District Manager. First, Plaunt reported to District Manager Vanessa Blum who visited the store about twice a month and stay all day, although some visits were much shorter. (Plaunt Dep. at 65 - 67). Blum met with Plaunt for about an hour and then, occasionally, directed Plaunt to stock shelves, sweep the floor, or run the cash register. (Id. at 67). Blum also communicated with Plaunt

directly by phone once a week and also by leaving district-wide weekly voicemails.  (Id. at 71 - 72).

After Blum, Plaunt's District Manager was Dawn Fiscel, who visited once a month for one half-hour.  (Plaunt Dep. at 69).  District Manager David Olson also visited once or twice a month, usually for one half-hour but sometimes for longer.  (Id. at 70).  It is not clear whether Fiscel and Olson managed concurrently or separately.  Fiscel and Olson would communicate with Plaunt directly by phone once a week and also by district-wide weekly voicemails as Blum had done.  (Id. at 71 - 72).

When Plaunt worked as a Store Manager, she performed the following duties, in accordance with her job description:

- she recruited, interviewed and recommended qualified employees for hire (Plaunt Dep. at 129, 155);

- she trained, evaluated, and counseled employees (id. at 123, 129, 141 - 42, 156, 202 - 03);

- she recommended store employees for pay raises and promotions and her recommendations were followed (id. at 126, 129, 156);

- she communicated expectations regarding performance, conduct and safety to employees (id. at 157);

- she ensured appropriate staffing and effective opening and closing (id. at 157 - 58);

- she evaluated operating statements to identify business trends, cost-control opportunities, and potential theft (id. at 158);

- she ordered inventory to ensure the store was properly stocked (id. at 158 - 59);

- she facilitated efficient staging, stocking, and storage of merchandise (id. at 159 - 60);

- she ensured proper merchandise presentation (id. at 160);

- she maintained accurate inventory levels by controlling damage, markdowns, scanning, and paperwork (id. at 161);

- she maintained financial integrity through cash accountability and key control (id. at 161 - 62);

- she provided customer service leadership (id. at 162 - 63);

3

- she kept a clean, organized, and safe store (id. at 163 - 64);

- she followed and enforced corporate policies and legal requirements contained in the Standard Operating Procedures Manual, Employee Handbook, and company communications (id. at 42 - 46, 128, 164 - 165);

- she completed all paperwork (id. at 165).

Plaunt admits that her District Manager did not interfere with her performance of any of these Store Manager job functions. (Id. at 155 - 65). Similarly, Plaunt indicates that her ASM only performed the Store Manager job functions described above at Plaunt's direction and discretion. (Id.)

In addition, Plaunt was responsible for store security (Plaunt Dep. at 180 - 182); ensured employee safety (id. at 157, 179 - 181); implemented a payroll budget (id. at 195 -196); directed store employees (id. at 96, 109, 168 - 170, 184 - 186, 200); scheduled employees' work (id. at 155, 157, 167, 183 - 184); and recommended employees for termination and her recommendations were followed (id. at 144 - 145, 147 - 151, 199). Plaunt was responsible for hearing employee complaints and for resolving employee conflicts. (Id. at 45, 49, 138 - 139, 168). Plaunt delegated tasks to employees and made daily work lists for them to complete. (Id. at 52, 54, 121 - 122). In sum, Plaunt was largely in charge of the store and responsible for its profitability. (Id. at 119, 166 - 67). In Plaunt's opinion the store could not operate without her. (Id. at 201).

Not all of Plaunt's job functions involved "managerial duties," however, and her job description contemplated manual labor. (Doc. 84 ¶ 9; Store Manager Job Description (Doc. 69-2)). In fact, the majority of Plaunt's actual time in the store was spent stocking shelves and assisting customers, though Plaunt continued to monitor the store's operation while performing these tasks. (Id. at 172, 200, 202, 204). The job descriptions of the Store Manager and the ASM positions have many "managerial

duties" in common and these two sorts of employees were evaluated using the same form. (Doc. 84 ¶ 5 ; ASM Job Description (Doc. 89-47); Combined Performance Review (Doc. 89-43)). Further, if Plaunt did not perform her manual labor tasks such as stocking shelves and cleaning, the store would not have run as profitably. (Plaunt Dep. at 200, 173).

Plaunt was required to place products in the store based on Dolgencorp's "planogram." (Plaunt Dep. at 93, 106). The planogram dictated 80% of each store's merchandise layout. (Id. at 106 - 107, 169). Plaunt used the remaining 20% to sell overstocked items. (Id. at 107). Plaunt's authority to order merchandise was similarly circumscribed– she made orders according to Dolgencorp's formula. (Id. at 175). Some of the merchandise was sent by Dolgencorp's corporate headquarters regardless of whether Plaunt ordered it or not. (Id. at 101).

Though Plaunt made recommendations on employee termination and compensation, she required District Manager approval. (Plaunt Dep. at 130, 150). Similarly, Plaunt could not mark down prices without approval. (Id. at 198). Plaunt did not interact with her store's landlord, but communicated facility problems to Dolgencorp's headquarters. (Id. at 112). Once or twice a year Plaunt would be sent to other store locations to perform manual labor. (Id. at 114).

On April 28, 2004 Plaunt had an argument with her District Manager, David Olsen, about the fact that her store did not have an ASM and that she was working too many hours. (Plaunt Dep. at 36 - 38). Plaunt walked out after this argument and no longer worked for Dolgencorp. (Id.)

On March 18, 2004, Plaunt consented to become a party plaintiff in Brown v. Dolgencorp, Inc., No. 02-C-673-W, an FLSA action against Dolgencorp seeking overtime pay in the United States District Court for the Northern District of Alabama. (Id. at 11 - 12; Consent to Become Party

5

Plaintiff in <u>Brown v. Dolgencorp, Inc.</u>, No. 02-C-673-W (Doc. 51-5)). On November 3, 2006 Plaunt's case was consolidated for discovery purposes under CV-06-CO-1538-W. (Doc. 1).

On December 22, 2008, Plaunt's case, along with twenty-two others, was transferred to this district from the United States District Court for the Northern District of Alabama by that court's order dated December 17, 2008. (Doc. 7). The case was initially assigned to the Honorable Thomas I. Vanaskie. (<u>Id.</u>) On February 24, 2009, the twenty-three cases were consolidated for pretrial purposes. (Doc. 30). By order of the court on October 21, 2009, discovery was due April 30, 2010. (Doc. 41). On May 17, 2010, Dolgencorp filed a motion to sever the twenty-three cases for individual trials. (Doc. 48). On May 21, 2010, Dolgencorp filed the instant motion for summary judgment. (Doc. 51). By an agreed order dated May 27, 2010, the court stayed twenty-one of the twenty-three consolidated cases pending (1) its decision on the motions for summary judgment on the claims of Plaintiff Cindy Pierce and the plaintiff in this case and (2) the Judicial Panel on Multidistrict Litigation's ruling on a motion to transfer the cases to another district. (Doc. 75; <u>see</u> <u>also</u> May 10, 2010 Letter from MDL Panel (Doc. 64)). On June 30, 2010 this case was reassigned from Judge Vanaskie to the undersigned.

On July 15, 2010, Dolgencorp filed a motion to strike evidence submitted by the plaintiff in opposition to the motion for summary judgment. (Doc. 100). On August 12, 2010, the Panel on Multidistrict Litigation denied the plaintiffs' motion to transfer the cases to the Northern District of Alabama for inclusion in MDL No. 1635. (Doc. 106). On September 16, 2010 the court consolidated two additional cases into No. 3:09cv079 for discovery purposes– <u>Shuback-Garrison v. Dolgencorp, Inc.</u>, No. 3:10cv834 and <u>Yasitis v. Dolgencorp, Inc.</u>, No. 3:10cv835– bringing the case to its

present posture.  (Doc. 109).

**JURISDICTION**

The court has federal question jurisdiction over this case brought under Fair Labor Standards Act, 29 U.S.C. § 213(a)(1).  <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>See</u> <u>Knabe v. Boury</u>, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing Fed. R. Civ. P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law.  <u>Id.</u>  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's

burden of proof at trial.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).
Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

**DISCUSSION**

Dolgencorp raises three arguments in its motion for summary judgment.  First, Dolgencorp argues that Plaunt falls is exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements because her primary duty was management.  Second, Dolgencorp argues that Plaunt is presumed to have had a primary duty of management under the Department of Labor's ("DOL") Field Operations Handbook and that Plaunt therefore is exempt.  Finally, Dolgencorp argues that any remaining claims under the FLSA are governed by a two-year statute of limitations.  We will address each argument in turn.

**1. Primary Duty Test**

Under the FLSA, an employer must pay overtime to employees working more than forty hours per week.  29 U.S.C.A. § 207(a)(1).  However, employers are exempted from paying overtime to "any employee employed in a bona fide executive, administrative, or professional capacity. . . ."  29 U.S.C.A. § 213(a)(1).  The executive exemption is further delineated by DOL regulations.  29 C.F.R. § 541 (2003).[3]  The applicable regulations define a "bona fide executive" as follows:

_____

[3] The DOL modified the regulations regarding the executive exemption, effective on August 23, 2004.  <u>See</u> 69 F.R. 22122-01 (April 23, 2004).  Because Plaunt's employment with Dolgencorp ended before August 23, 2004, her claims are evaluated under the prior test.  (<u>See</u> Def.'s Br. Supp. Mot. Summ. J. 1 n.1 (Doc. 53)).

The term employee employed in a bona fide executive [] capacity in section 13(a)(1) of the act shall mean any employee:
(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
(b) Who customarily and regularly directs the work of two or more other employees therein; and
(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
(d) Who customarily and regularly exercises discretionary powers; and
(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: **Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.**

29 C.F.R. § 541.1 (2003) (emphasis added).

Subsection (f), emphasised above, then, states what is referred to as

the pre-2004 executive exemption "short test" because if subsection (f) is

satisfied, then the court may dispense with subsections (a) through (e). Id. at § (f). Split into elements, under the "short test" such an employee must (1) be compensated no less than $250.00 per week, (2) regularly direct the work of at least two other employees, and (3) have a primary duty of management of a recognized subdivision of the enterprise. Id.

There is no genuine issue of material fact as to whether Plaunt satisfies the first two objective criteria for determining bona fide executive status– Plaunt earned more than $250.00 per week and regularly directed the work of two other employees. (See Plaunt Dep. at 32 (Plaunt earned $425.00 per week as Store Manager), 168 (Plaunt directed ASM and clerks)). (See also Joint Stipulation of Fact and Law in Brown v. Dolgencorp, Inc., No. 7:02cv673, ¶ 3 ("All Plaintiff/Opt-Ins were paid at least the statutory required minimum salary while they were Store Managers. . . ."), ¶ 4 ("All Plaintiff/Opt-Ins regularly and customarily supervised two or more other employees while they were employed as Store Managers. . . .") (Doc. 56-2)).

Thus, the only question is whether Plaunt's primary duty was management of a recognized subdivision of the enterprise. 29 C.F.R. § 541.1(f) (2003). The applicable regulations offer the following guidance on what constitutes "management":

> (a) In the usual situation the determination of whether a particular kind of work is exempt or nonexempt in nature is not difficult. In the vast majority of cases the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption.
> (b) For example, it is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in

10

> supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102 (2003).

The applicable regulations also describe how an employee's "primary duty" is determined:

> A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

29 C.F.R. § 541.103 (2003).

Thus, the inquiry into an employee's primary duty can be broken into several elements: (a) the amount of time spent on managerial duties; (b) the relative importance of the employee's managerial and non-managerial duties; (c) the frequency with which the employee exercises discretion; (d) the degree to which the employee is supervised; and (e) the relative

salaries paid to the employee as compared to a non-exempt employee who performs the same non-managerial tasks.  Id.  The court will address each of these elements, in turn, and assess Plaunt's primary duty under the totality of the circumstances.  See Counts v. South Carolina Elec. & Gas Co., 317 F.2d 453, 456 (4th Cir. 2003).

In conducting our analysis, we heed the counsel of the United States Court of Appeals for the Third Circuit that "[e]xemptions from the FLSA are to be narrowly construed against the employer, and the employer has the burden of establishing an exemption."  Pignataro v. Port Auth. of New York and New Jersey, 593 F.3d 265, 268 (3d Cir. 2010) (citing Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1143 (3d Cir. 1983)).  We also focus on the evidence of record regarding Plaunt's actual day-to-day activities, as opposed to generic job descriptions or performance evaluations.  See, e.g., Schaefer v. Indiana Michigan Power Co., 358 F.3d 394, 400 (6th Cir. 2004).

**(a) The amount of time spent on managerial duties**

Plaunt argues that she spent a majority of her time stocking shelves, helping customers, and cleaning the store.  (Plaunt Dep. at 202).  She notes that, although an employee can be a manager while performing non-managerial tasks, she could not have been simultaneously managing while retrieving shopping carts from the parking lot, cleaning the bathroom, or working the cash register as the only employee at the store.  Plaunt also avails herself of the proposition that "[h]ow an employee spends her time working is a question of fact, while the question of whether the employee's particular activities exclude her from the overtime benefits of the FLSA is a question of law."  Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714

(1986).[4]

It does not appear that Dolgencorp disputes Plaunt's assertion that she spent the majority of her time performing non-managerial tasks. While it is not clear what percentage of Plaunt's time was spent on managerial tasks, we will assume she spent less than 50% of her time performing purely managerial tasks. Bearing in mind that this time inquiry is not determinative, we presume that this factor favors Plaunt and analyze the remaining factors.[5]

**(b) The relative importance of the employees managerial and non-managerial duties**

The second element of the primary duty inquiry evaluates the relative importance of Plaunt's managerial and non-managerial duties from the

_____

[4] Plaunt also cites Dolgencorp's survey results indicating that only 10% of store time is spent on managerial duties. (See Common Ex. 1, Overview of Store Time (Doc. 89); Pl.'s Common Br. 6 (Doc. 78)). Dolgencorp seeks to strike this and other evidence from the record. (Def.'s Mot. to Strike and Objs. to Pl.'s Evidence (Doc. 100)). As we have not relied on this survey or any of the other evidence to which Dolgencorp objects, Dolgencorp's motion to strike will be denied as moot.

[5] The defendant suggests that "[w]here an employee spends *more than* 50% of her time on managerial duties this scenario is dispositive–management is her primary duty." (Def.'s Common Br. 6 (Doc. 55)). This statement does not accurately reflect that the DOL plainly offers the "amount of time" inquiry as a "useful guide" and "a good rule of thumb." 29 C.F.R. § 541.103 (2003). If Dolgencorp's interpretation of the regulation were correct, its inverse implication would dictate denial of Dolgencorp's motion for summary judgment, outright, insofar as Plaunt unquestionably spent more of her time on non-managerial duties. Instead, we will proceed to examine each factor. See id. ("A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case."; "Time alone, however, is not the sole test. . . .").

perspective of the employer, Dolgencorp.  <u>See</u>, <u>e.g.</u>, <u>Dalheim v. KDFW-TV</u>, 918 F.2d 1220, 1227 (5th Cir. 1990) ("the employee's primary duty will usually be what she does that is of principal value to the employer"); <u>Haines v. S. Retailers, Inc.</u>, 939 F. Supp. 441, 449 (E.D. Va. 1996) (treating relative importance "as a measure of the significance of the managerial tasks to the success of the facility").  One logical way of addressing this factor is to imagine how the store would function if the employee did not perform her non-managerial or managerial duties, alternatively.  <u>See</u> <u>King v. Dolgencorp, Inc.</u>, No. 3:09cv146, slip op. at 23 (M.D. Pa. May 6, 2010) (report and recommendation on motion for summary judgment) ("If plaintiff did not perform her nonmanagerial duties, her Dollar General store may not have functioned well; but if she did not perform her managerial duties, the store would have been incapable of doing business.") (citing <u>Thomas v. Speedway SuperAmerica, LLC</u>, 506 F.3d 496, 505 (6th Cir. 2007)).

Dolgencorp argues that Plaunt's daily work– as described in the Store Manager job description (Doc. 69-2) and performance evaluation (Doc. 51-6)– establishes the relative importance of Plaunt's managerial functions to Dolgencorp's profitable operation of that store location. Dolgencorp also argues that the fact that Plaunt's potential bonus was tied to the store's profitability shows that Dolgencorp valued Plaunt's successful management of the store.

Plaunt, argues that a reasonable jury could conclude that Dolgencorp actually valued Plaunt's non-managerial duties– unloading trucks, stocking shelves, and running the register– most highly.  Plaunt points out that she spent much time in the store alone, ostensibly directing no other employees, and was occasionally sent to other store locations where she performed only manual labor.  Finally, Plaunt counters that non-exempt

14

hourly employees received bonuses, that ASMs had similar job descriptions and identical performance evaluations as Store Managers; that she ordered merchandise according to rigid formulae; and that she displayed merchandise based largely on dictated floorplans.

Here, as in <u>King</u>, the record indicates that if Plaunt did not perform her non-managerial functions– such as cleaning the floors or bathrooms, stocking the shelves, manning the cash-register, or unloading delivery trucks– the store would have been unkempt and run less smoothly. However, if Plaunt did not perform her managerial functions– including scheduling hours, training employees, directing employees, ordering merchandise, responding to complaints, and implementing safety policies– a reasonable jury could conclude that the store would not have functioned. A reasonable jury could, however, also conclude that, given the fact that Plaunt's ASM had a similar job description and the store's ability to operate in Plaunt's absence, that if Plaunt did not perform her managerial functiosn the store would have continued to operate, albeit less efficiently.

Furthermore, a reasonable jury could, just as plausibly, conclude that Dolgencorp valued Plaunt's non-managerial contributions more highly than her managerial functions because Plaunt allegedly spent a small portion of her time doing managerial work. The jury could presume that if Dolgencorp truly derived more value from Plaunt's managment skills, it would have encouraged her to spend more time on those tasks. By allegedly refusing to allot more labor hours for clerks and forcing Plaunt to perform such manual labor herself, the jury could reasonably find that the manual labor was what Dolgencorp most valued.[6]

---

[6] This is not to say that a company whose manager spends more time on non-managerial tasks than on managerial task necessarily values

**(c) The frequency with which the employee exercises discretion**

The third and fourth elements of the primary duty inquiry overlap somewhat, but are distinct. The third element assesses how frequently the employee is called upon to exercise discretion while the fourth asks the extent to which the employee is free from supervision.

> (a) Section 541.1(d) requires that an exempt executive employee customarily and regularly exercise discretionary powers. A person whose work is so completely routinized that he has no discretion does not qualify for exemption.
> (b) The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretionary powers in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretionary powers.

29 C. F. R. § 541.107 (2003).

Dolgencorp argues that Plaunt exercised discretion on a daily basis: allocating her payroll budget, adjusting merchandise orders, improving her store's appearance and customer service, laying out 20% of the floorspace, hiring applicants, training employees, inspecting the store during her off-days, recommending terminations, and assigning tasks.

Plaunt responds that any small-scale discretion she might have had

---

the non-managerial tasks more highly– such an approach would be redundant with the preceding time-inquiry. However, in instances such as this, where (1) the employee spends more than 50% of her time on non-managerial duties and therefore, as a rule of thumb, does not have management as her primary duty, (2) the burden is on the employer to establish which job function it values more highly, and (3) exemptions are narrowly construed against the employer, and (4) evidence is to be viewed in a light most favorable to the non-moving party, it becomes difficult not to find a genuine issue of material fact as to what that the employer truly values. See 29 C.F.R. § 541.103 (2003); Pignataro, 593 F.3d at 268; FED. R. CIV. P. 56(c).

was tightly circumscribed by corporate manuals, policies, formulae, and floorplans.  She notes that the labor budget imposed upon her limited the work she could assign, that 80% of the floorplan was dictated by a planogram, that her merchandise orders were largely a mechanical application of a corporate formula, that some merchandise was forced upon her, that she could not fire anyone on her own, that she could not set starting pay rates, and that she could not change prices without approval.

Dolgencorp notes that "several circuits have found that, as a matter of law, an individual in charge of a separate unit of a multi-unit retail chain has management as his primary duty *even if* the company implements detailed, perhaps even rigid, operating procedures." (Def.'s Common Br. 22 (Doc. 55) (citing Murray v. Stuckey's Inc., 939 F.2d 614, 619 (8th Cir. 1991); Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982); Donovan v. Burger King Corp., 672 F.2d 221, 227 (1st Cir. 1982)).  Such an approach appears to be at odds with the first sentence of the DOL regulation explaining the primary duty inquiry and we decline to follow suit. See 29 C.F.R. § 541.103 (2003) ("A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case.").  In addition, the cases cited are distinguishable.

In Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982) the United States Court of Appeals for the Second Circuit affirmed the trial court's determination, after a bench trial, that the employees in that case were exempt from FLSA requirements.  The Second Circuit noted that the assistant managers in question:

> schedule work time for employees according to estimates of business based on factors such as weather and local events and assign them to particular work stations. They have the power, which they exercise, to move employees from task to task and to see that they are performing their jobs. They represent management in dealings with

> employees when they are in charge of the
> restaurant and, while they do not exercise the
> power to hire and fire frequently, there are some
> instances thereof in the record. Given that the ten
> to twenty-five employees under their direction are
> teenagers, many on their first job, this supervision is
> a not insubstantial responsibility. Assistant
> Managers order supplies in quantities based on
> their judgments as to future sales and are
> responsible for dealing with the public. Finally, they
> must deal with cash or inventory irregularities.

Id. at 521.

The court dismissed the Secretary of Labor's argument that such discretionary actions must be discounted when they are dictated by rigid guidelines and policies. Id. Dolgencorp quotes the Second Circuit's statement that they "fully recognize that the economic genius of the Burger King enterprise lies in providing uniform products and service economically in many different locations and that adherence by Assistant Managers to a remarkably detailed routine is critical to commercial success. The exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to 'the book.'" Id. at 521 - 22; (see Def.'s Common Br. 23 (Doc. 55)).

It must be said, however, that economic genius and compliance with the FLSA need not be mutually exclusive, and that when they do conflict only one is binding upon this court. More important, the Second Circuit immediately went on to say that "[i]n the competitive, low margin circumstances of this business, the wrong number of employees, too many or too few supplies on hand, delays in service, the preparation of food which must be thrown away, or an underdirected or undersupervised work force all can make the difference between commercial success and failure." Burger King, 675 F.2d at 522. However, an action is not discretionary simply because it allows the operation to succeed– stocking shelves and taking out the trash could make the difference between

18

success and failure but these are not discretionary acts. Turning to the record in this case, a reasonable jury could conclude that Plaunt had no discretion to set the number of employees, as the assistants in Burger King did. The jury could also find that Dolgencorp's ordering formula was designed to ensure that Plaunt could not order too many or too few supplies, precluding slowdowns or waste. There is no question that part of Plaunt's job was supervision and direction, but there remains a question of fact as to whether she exercised managerial discretion on a day-to-day basis.[7]

Similarly, in <u>Murray v. Stuckey's Inc.</u>, 939 F.2d 614, 619 (8th Cir. 1991), the United States Court of Appeals for the Eighth Circuit reversed the trial court's determination, after a bench trial, that the plaintiffs– married couples who lived in and operated Stuckey's roadside gas-station / convenience store / restaurants– were non-exempt. The court followed the approach of the Second Circuit in <u>Donovan v. Burger King Corp.</u>, 675 F.2d 516, 521-22 (2d Cir. 1982), and remanded to the trial court, noting that "the

---

[7] The United States Court of Appeals for the First Circuit, in <u>Donovan v. Burger King Corp.</u>, 672 F.2d 221, 226 (1st Cir. 1982), also stated that "[t]he fact that Burger King has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate [the conclusion that supervision is a management duty]. Ensuring that company policies are carried out constitutes the very essence of supervisory work." This analysis– which equates supervision and direction with discretion– is too pat. Given that the primary duty inquiry is but one element of the executive exemption short test, and that another element of this short test asks whether the employee regularly directs the work of two other employees, the First Circuit's interpretation of the analysis renders the "discretion" inquiry superfluous. <u>See</u> 29 C.F.R. § 541.1(f) (2003). Accordingly, we do not find it persuasive, and adhere to the fact intensive approach set forth by the regulations. 29 C.F.R. § 541.103 (2003).

primary duty of a local store manager is no less managerial because the store manager reports to a distant regional manager whose primary duty is to manage multiple stores at a higher level within the organization." Stuckey's, 939 F.2d at 619. The court did not perform a full analysis of the primary duty factors or otherwise indicate which facts evidenced the plaintiffs' discretion, although the live-in managers hired their own employees. The Eighth Circuit took up the case again, after remand. Murray v. Stuckey's Inc., 50 F.3d 564 (8th Cir. 1995). The court pointed out that "various store managers testified that they hired other employees; scheduled employee work hours; trained and disciplined other employees; ordered store inventories; and handled customer complaints. . . ." Id. at 570.

In comparison, Plaunt scheduled hours, trained employees, and handled complaints. Plaunt did not, however, have discretion to hire– she could interview and make recommendations. Neither did Plaunt have authority to grant discounts or markdowns, extend credit to customers, approve checks, or influence how products were displayed, all of which the Eighth Circuit cited favorably as indicia of discretion. See id. at 570 (citing Marshall v. Sally Beauty Co., No. 80-4138, 25 Wage & Hour Cas. (BNA) 672, 673, 1982 WL 2184 *2 (E.D. La. April 19, 1982)).

Plaunt cites Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1273 (11th Cir. 2008) in support of her argument that Dolgencorp's detailed manuals and policies make her non-exempt. There, the Eleventh Circuit upheld a jury verdict in favor of the plaintiffs. Id.

> Plaintiffs presented evidence that store managers rarely exercised discretion because either the operations manuals or the district managers' directives controlled virtually every aspect of a store's day-to-day operations. The manuals and other corporate directives micro-managed the days and hours of store operations, the number of key

20

> sets for each store, who may possess the key sets, entire store layouts, the selection, presentation, and pricing of merchandise, promotions, payroll budgets, and staffing levels. The manuals even instruct store managers on the smallest details, such as how to arrange clip boards, what items go in each of the four drawers of the single file cabinet, and how to remove spots and chewing gum from store mats.

Morgan, 551 F.3d at 1270. The Morgan court noted that Family Dollar district managers and corporate headquarters "made the vast majority of day-to-day decisions, and store managers had little discretion." Id. Morgan summarized the trial evidence as follows:

> The few decisions not mandated by the manuals and corporate headquarters are vested in the district manager. These decisions include the power to change store hours, close for bad weather, approve changes to store layouts, establish all employees' initial rates of pay, approve all pay raises, set payroll budgets, control the total labor hours allocated to each store, approve the hiring and firing of assistant managers, and even approve the use of appliances such as coffee pots. Even when a store manager exercised discretion in scheduling employees for the week, she did so within the strict constraints of mandatory store hours, a limited payroll budget, a prohibition on overtime work by hourly employees, and a staff scheduler. This evidence supports a reasonable jury finding that Family Dollar's store managers had few, and infrequently exercised, discretionary powers.

Morgan at 1270 - 71.

A reasonable jury could conclude that Plaunt operated with a similar amount of discretion. Specifically, the jury could find that: Plaunt could not alter store hours or change the store's layout; Plaunt could not set pay rates, but only recommend advancements; Plaunt could not hire or fire employees, but only make recommendations; and that Plaunt was required to operate within the payroll budget. Accordingly, a genuine issue of material fact exists as to whether Plaunt exercised discretion sufficient to find that her primary duty was management.

**(d) The degree to which the employee is supervised**

21

Dolgencorp argues that on the average day Plaunt was the only manager at her store, and that District Managers only visited once or twice a month. Plaunt also spoke with her District Manager on a weekly basis but only to relay sales figures. In addition, Plaunt listened to a district-wide weekly voicemail from her District Manager. Thus, most days Plaunt operated without any physical supervision.

Plaunt agrees that District Managers visited rarely, though she points out that on occasion these visits lasted the entire day. She also points out that District Manager Vanessa Blum would sometimes direct Plaunt to perform manual labor during these visits. Plaunt mainly argues that, in effect, the corporate policies lingered daily as a form of supervision.

It is clear that District Mangers did supervise Store Managers. It is also clear that Plaunt, as a Store Manager, operated within the constraints of corporate policies. However, she was certainly much more free from supervision than any of her employees, to the extent that comparison is instructive. The record establishes that on most days she had no contact with any supervisor. Once a week she would speak with her District Manager to give sales information– a loose form of supervision. She would also listen to voicemails– which cannot truly be considered supervision. Finally, a District Manager would visit once or twice a month, usually for less than one hour. The fact that the district manager would on occasion instruct Plaunt to perform non-managerial duties does not create a question of fact as to whether Plaunt was supervised often. The supervision was clearly seldom in the sense an ordinary worker would understand. There is no genuine question as to whether Plaunt was relatively free from supervision, therefore this factor favors exemption.

**(e) The relative salaries paid to the employee as compared to a non-exempt employee who performs the same non-managerial tasks**

22

The fifth and final element of the primary duty test compares the employee's salary to that of a non-exempt employee who performs the same non-managerial tasks. Dolgencorp argues that, on a weekly basis, Plaunt earned between 144% and 183% of her ASM's salary, although this appears to be a partial miscalculation.[8] (See Def.'s Br. Supp. Mot. Summ. J. 16 n.92 (Doc. 53) ("$425/$260 = 183%[sic]")). Our calculations lead to us to conclude that under Dolgencorp's theory Plaunt earned as much as 163% of her ASM (to wit, 425.00/260.00 = 163.46%). Thus, by Dolgencorp's frame of reference, Plaunt earned between 144% and 163% of her ASM's earnings.

Plaunt, noting that Dolgencorp's calculation assumes a forty-hour work week which does not reflect the hours she actually worked, chooses to frame the comparison in terms of her effective hourly wage, based on a fifty-hour work week. (Pl.'s Common Br. 16 (Doc. 78) (citing Jones v. Va. Oil Co., Inc., 69 Fed. Appx. 633, 639 (4th Cir. 2003)). See also Myrick v. Dolgencorp, Inc., No. 7:09cv5, 2010 WL 146874, at *7 (M.D. Ga. Jan. 11, 2010) ("The Court finds no merit to Dollar General's argument that it is improper for Myrick to convert her salary to an hourly basis for comparison purposes."). Converting Plaunt's weekly salary to an hourly wage, Plaunt

---

[8] Plaunt earned $425.00 per week while her ASM earned $6.50 per hour. At $6.50 per hour the ASM, Mary Orvis, earned $260.00 per forty-hour week. (Ex. B, Store Report (Doc. 59)). Thus, at that time Plaunt earned 163% of her ASM's salary. Later, Plaunt earned $475.00 per week while her ASM, Linda Ingram, earned $8.25 per hour. (Id.) At that rate her ASM earned $330.00 per forty-hour week. During this period Plaunt earned 144% of her ASM's salary.

earned between 115% and 131% of her ASM's hourly wage.[9]

Given the summary judgment standard, which requires that we view the evidence in a light most favorable to the non-moving party, we will throw out the high range of each calculation. This leaves comparative ratios of 144% and 115%. We would note that no one means of calculation is more "gymnastic" than any other– they are simply matters of perspective. (See Def.'s Common Br. 27 (Doc. 55) (quoting Moore v. Tractor Supply co. 352 F. Supp. 2d 1268, 1279 (S.D. Fla. 2004)).[10] We would note, however, that the purpose of the primary duty analysis is to determine whether an employee is exempted from the FLSA's overtime requirements and that this element of the inquiry asks the court to determine "the relationship between his salary and the wages paid other

_____

[9] Having earned $425.00 per week and then $475.00 per week, assuming fifty hours of work, Plaunt's effective hourly wage was $8.50 and then $9.50, respectively. When Plaunt effectively earned $8.50 per hour her ASM earned $6.50 per hour, in other words, Plaunt earned 131% of her ASM's salary on an hourly basis. Later, when Plaunt effectively earned $9.50 per hour her ASM earned $8.25 per hour, or 115% on an hourly basis.

[10] A third perspective might ask what Dolgencorp would have had to pay an ASM who worked fifty hours per week, as Plaunt did. At $6.50 per hour, Plaunt's ASM would have been paid $260 hours per week for the first forty hours the ASM worked, and then another $97.50 per week for ten hours of overtime at a time-and-one-half rate, that is, $9.75 per hour. This total is $357.50 per week. Plaunt earned $425.00 per week during that period, yielding a ratio of 119% of her ASM's salary, accounting for her ASM's overtime. When Plaunt's ASM earned $8.25 per hour, the ASM would have been paid $330 per hour for the first forty hours and then another $123.75 for ten hours of overtime at a time-and-one-half rate of $12.375. This total is $453.75. Plaunt earned $475.00 per week during that period, yielding a ratio of only 105% of her ASM's salary, accounting for her ASM's overtime.

employees for the kind of nonexempt work performed by the supervisor."
29 C.F.R. § 541.103 (2003). We find that converting Plaunt's weekly
salary into an effective hourly wage is most appropriate in order to find a
common basis with which to compare the wages paid to others. To ignore
the fact that Plaunt worked more than forty hours per week would largely
frustrate the purpose of this inquiry: to determine whether the employer
sought to subvert the FLSA by attaching an overtime exemption to an
employee who otherwise performs the same non-exempt tasks as hourly
employees. The only comparison which approaches a standard of
objectivity is to ask what an employer must pay the manager and the other
employee, respectively, for the same amount of nonexempt work. Without
some standard unit, there can be no useful comparison in this already-
amorphous inquiry. Finally, this approach is most consistent with the
proposition that "[e]xemptions from the FLSA are to be narrowly construed
against the employer, and the employer has the burden of establishing an
exemption." Pignataro, 593 F.3d at 268. Accordingly, we find that there is
a genuine issue of fact as to whether Plaunt's effective hourly wage ratio of
115% of her ASM's hourly wage is so significant as to justify Plaunt's
exemption from the FLSA.

Weighing all of these factors, under the totality of the circumstances,
and noting that the burden of proving an exemption lies with the employer,
Dolgencorp, we conclude that summary judgment is not warranted in this
case. Dolgencorp has not established that there is no genuine issue of
material fact as to whether Plaunt's primary duty was that of management.
First, Plaunt predominantly performed non-managerial tasks, which, as a
rule of thumb, indicates that management was not Plaunt's primary duty.
Second, a genuine issue of material fact exists as to which of Plaunt's
functions– managerial or non-managerial– were most valued by

Dolgencorp.  Third, a reasonable jury could conclude that Plaunt did not frequently exercise discretion.  Fourth, a reasonable jury could find that Plaunt's salary as a manager did not differ significantly from wages paid to non-exempt employees.  Dolgencorp has established that there is no genuine issue of material fact as to whether Plaunt operated with a significant degree of freedom from supervision.  Balancing these factors, we determine that Dolgencorp's motion for summary judgment should be denied.

## 2. DOL Field Operations Handbook Presumption

Dolgencorp argues, based on the DOL Field Operations Handbook ("Handbook"), that Plaunt is presumed to have had management as her primary duty.  Dolgencorp argues that the DOL will presume that an employee that (1) is in charge of small retail store and (2) is paid substantially higher wages than her subordinates has management as her primary duty.  (See Def.'s Common Br. 31 n.106 (Doc. 55) (citing Ex. 18, Department of Labor's Field Operations Handbook (Doc. 56-26)).

The Handbook states, "[f]or example, management personnel in small retail or service establishments who are in charge of the establishment during their tour of duty and are paid substantially higher wages than their subordinates will typically meet the primary duty test." (Doc. 56-26 at 3)).  We decline to presume that Plaunt meets the primary duty test.  First, the excerpt from the Handbook is clearly advisory, and we have already performed a full primary duty analysis.  Second, having performed our analysis, we find that there is a question of material fact as to whether Plaunt was paid substantially higher wages, therefore the presumption is not, by its own terms, appropriate.

## 3. Statute of Limitations

Dolgencorp argues that Plaunt has not shown a willful violation of the

FLSA, and that, therefore, the court should apply a two-year statute of limitations to Plaunt's claims and not a three-year statute of limitations. <u>See</u> 29 U.S.C. § 255(a) (An action for unpaid overtime "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued"). This would bar any claim for overtime before March 18, 2002, two years before Plaunt consented to bring this action on March 18, 2004. However, "[w]hether a violation of the FLSA is willful is a question of fact. . . ." <u>Pignataro</u>, 593 F.3d at 273 (citing <u>Bianchi Trison Corp. v. Chao</u>, 409 F.3d 196, 208 (3d Cir. 2005)). Therefore, we decline to rule on the applicable statute of limitations.

**CONCLUSION**

For the reasons stated above, we determine that there are genuine issues of material fact which remain for trial, and that Dolgencorp's motion for summary judgment shall be denied. Dolgencorp's motion to strike evidence submitted by Plaunt will be denied as being moot, insofar as we have not relied on any of this evidence. Finally, we decline to impose a two-year statute of limitation on Plaunt's claims at this time.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHNNA PLAUNT,                          :    **No. 3:09cv079**
                                        :    **No. 1:09cv084**
                    **Plaintiff**       :
        **v.**                          :    **(Judge Munley)**
                                        :
DOLGENCORP, INC.,                       :
                                        :
                    **Defendant**       :
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

    **AND NOW**, to wit, this __14th__ day of December 2010, upon
consideration of Defendant Dolgencorp, Inc.'s ("Dolgencorp") motion for
summary judgment on Plaintiff Johnna Plaunt's ("Plaunt") claims (Doc. 51)
and motion to strike Plaunt's evidence (Doc. 100), it is HEREBY
**ORDERED** that the motions are **DENIED**.

    Pursuant to the parties' joint stipulation (Doc. 38) the Clerk of Court
is directed to amend the docket to reflect that Defendants Dollar General
Partners; Dolgencorp of New York, Inc.; and Dolgencorp of Texas, Inc. are
terminated as parties.

                                      **BY THE COURT:**


                                    s/ James M. Munley
                                    **JUDGE JAMES M. MUNLEY**
                                    **United States District Court**